SAUSA: Michael S. DiBattista

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

**26 MAG 2163**

UNITED STATES OF AMERICA

v.

TAJ TARSHA,

Defendant.

<u>**SEALED COMPLAINT**</u>

Violations of 18 U.S.C. §§ 1343 & 1349

COUNTY OF OFFENSE:
NEW YORK

SOUTHERN DISTRICT OF NEW YORK, ss.:

THOMAS KOVACS, being duly sworn, deposes and says that he is a Special Agent with the Federal Bureau of Investigation ("FBI"), and charges as follows:

<u>**COUNT ONE**</u>
**(Conspiracy to Commit Wire Fraud)**

1.      From at least in or about March 2022 up to and including at least in or about December 2024, in the Southern District of New York and elsewhere, TAJ TARSHA, the defendant, and others known and unknown, willfully and knowingly combined, conspired, confederated, and agreed together and with each other to commit wire fraud, in violation of Title 18, United States Code, Section 1343.

2.      It was a part and an object of the conspiracy that TAJ TARSHA, the defendant, and others known and unknown, knowingly having devised and intending to devise a scheme and artifice to defraud, and for obtaining money and property by means of false and fraudulent pretenses, representations, and promises, would and did transmit and cause to be transmitted by means of wire, radio, and television communication in interstate and foreign commerce, writings, signs, signals, pictures, and sounds for the purpose of executing such scheme and artifice, in violation of Title 18, United States Code, Section 1343, to wit, the defendant agreed with others to participate in a scheme to defraud investors in Few and Far Limited and obtain their money and property, which would and did involve interstate wire transfers through the Southern District of New York and elsewhere.

(Title 18, United States Code, Section 1349.)

<u>**COUNT TWO**</u>
**(Wire Fraud)**

3.      From at least in or about March 2022 up to and including at least in or about December 2024, in the Southern District of New York and elsewhere, TAJ TARSHA, the defendant, knowingly having devised and intending to devise a scheme and artifice to defraud, and for obtaining money and property by means of false and fraudulent pretenses, representations, and promises, transmitted and caused to be transmitted by means of wire, radio, and television

communication in interstate and foreign commerce, writings, signs, signals, pictures, and sounds, for the purpose of executing such scheme and artifice, to wit, the defendant participated in a scheme to defraud investors in Few and Far Limited and obtain their money and property, which involved interstate wire transfers through the Southern District of New York and elsewhere.

(Title 18, United States Code, Sections 1343 and 2.)

The bases for my knowledge and for the foregoing charges are, in part, as follows:

4.      I have been a Special Agent with the FBI since 2019. I started with the FBI as a Forensic Accountant, and since 2022, I have served as a Special Agent. I am currently assigned to a squad in the FBI's New York field office that specializes in white collar crimes, including wire fraud and securities fraud. During my tenure with the FBI, I have participated in the investigation of numerous sophisticated frauds, including financial and corporate frauds. Through my training, education, and experience, I have become familiar with the manner in which such frauds are perpetrated.

5.      I have been personally involved in the investigation of this matter. This affidavit is based upon my investigative work, my conversations with law enforcement agents and others, and my examination of reports and records. Because this affidavit is being submitted for the limited purpose of establishing probable cause, it does not include all the facts that I have learned during the course of my investigation. Where the contents of documents and the actions, statements, and conversations of others are reported herein, they are reported in substance and in part, except where otherwise indicated.

### Background on Few and Far Limited

6.      Based on my review of documents produced by investors and former contractors of Few and Far Limited ("Few and Far"), notes of interviews with investors and former contractors of Few and Far, my discussions with other law enforcement officers, and my participation in this investigation, I am aware of the following, in substance and in part:

a.      Few and Far was at all relevant times a British Virgin Islands limited liability company. Few and Far was founded in or about March 2022 by TAJ TARSHA, the defendant, and others. The company was created to operate an online marketplace for the purchase, sale, and auction of non-fungible tokens ("NFTs")—unique digital assets, such as digital artwork or collectibles, whose ownership is recorded on a blockchain, which is a publicly viewable digital ledger maintained across a decentralized network of computers. Few and Far's NFT marketplace was built on the NEAR Protocol, a particular blockchain network marketed to developers as fast and low-cost. The company's central marketing proposition was that it had developed proprietary technology to automatically ensure that artists who sold NFTs through the platform would receive a percentage of future resales.

b.      From the company's founding until at least December 2024, TARSHA served as Few and Far's Head of Design and Head of App Development; his cofounder ("CC-1") served as Few and Far's Chief Operating Officer; and until approximately July 2023, an independent contractor who helped to found the company ("Contractor-1") served as Few and

2

Far's Chief Technical Officer. In or about October 2022, the company hired another employee ("CC-2"), who served as Few and Far's Operations Director. Since the company's founding, TARSHA served as the primary public representative of Few and Far, appearing in sponsored media and at industry events. TARSHA is the sole equity owner of Few and Far.

### TARSHA and CC-1 Successfully Solicit Investments for Few and Far

7.    Based on my review of emails and other documents produced by Few and Far investors and former contractors, notes of interviews with Few and Far investors and former contractors, my discussions with other law enforcement officers, and my participation in this investigation, I am aware of the following, in substance and in part:

a.    Shortly after Few and Far was founded, TAJ TARSHA, the defendant, CC-1, and Contractor-1 began to solicit investments in Few and Far through the proposed future issuance of a proprietary cryptocurrency token called "FAR." The FAR token did not yet exist at the time of the solicitation. Rather, investors were asked to commit money upfront in exchange for a contractual right to receive FAR tokens once the company created and launched them at a future date. Few and Far represented to prospective investors that the FAR token would serve as the native currency and ownership stake of the Few and Far marketplace—meaning, once launched, FAR tokens would be used to conduct transactions on the platform, reward creators, and give holders a stake in the platform's commercial success. The value of the FAR token was therefore represented to be directly tied to the growth and adoption of the Few and Far marketplace itself.

b.    Based on my review of a 2022 investor pitch deck, I have learned that TARSHA and CC-1 solicited investors to participate in a "private sale" targeting $10,000,000 worth of FAR tokens. The pitch deck represented to prospective investors that their funds would be deployed for four specific business purposes: (1) winning market share and achieving key performance indicators to establish Few and Far as "the DeFi NFT marketplace leader"; (2) growing the company's "core engineering to help scale features and technology faster"; (3) developing "NFT launchpad functionality to cement" the company's presence in the market; and (4) launching dedicated sub-marketplaces for gaming and music content. The pitch deck made no reference to any performance-based compensation, bonuses, or any other form of personal remuneration for TARSHA, CC-1, or any other company founder or employee as a contemplated use of investor proceeds.

c.    Investors who agreed to participate in Few and Far's private sale executed a Simple Agreement for Future Tokens ("SAFT")—a contract through which an investor pays money today in exchange for the right to receive tokens that do not yet exist, to be delivered once the issuing company creates and launches them. Each SAFT specified the investor's purchase amount, the number of FAR tokens to be received upon launch, and the purchase price per FAR token. Pursuant to the SAFTs, investors were required to pay in either USDC Coin ("USDC") or Tether ("USDT")—both cryptocurrencies pegged one-to-one to the U.S. dollar—by transferring funds to a specific digital wallet designated by Few and Far on the Ethereum blockchain, with the following wallet address: 0x7121e8Ddf854e024dc1C2c75bFdC64D1050196bB (the "Investor Landing Wallet").

d.      The private sale attracted substantial investor interest. At least 48 individuals or entities collectively agreed to invest approximately $8,415,000 in exchange for FAR tokens pursuant to executed SAFTs. For instance, based on my review of emails, SAFTs, and other documents produced by Few and Far investors and former contractors, I have learned that one investor ("Investor-1") agreed to purchase $3,000,000 worth of FAR tokens, equivalent to 5% of the supply of FAR tokens to be generated. Two additional investors, both located in the Southern District of New York, agreed, respectively, to purchase $150,000 worth of FAR tokens (equivalent to 1,000,000 tokens) and $50,000 worth of FAR tokens (equivalent to 333,333 tokens).

### TARSHA and Co-Conspirators Misappropriate Investors' Funds

8.      Based on my review of emails and other documents produced by Few and Far investors and former contractors, notes of interviews with Few and Far investors and former contractors, blockchain transfer records, documents produced by crypto exchanges, my discussions with other law enforcement officers, and my participation in this investigation, I am aware of the following, in substance and in part:

a.      As described above, investors transmitted their funds to the Investor Landing Wallet pursuant to the terms of their executed SAFTs, based on the understanding that those funds would be used for the business purposes represented in the pitch deck. Beginning in or around March 2022, the Investor Landing Wallet started receiving investor funds. For instance, on or about April 18, 2022, at 9:52 PM UTC, Investor-1 transferred $3,000,000 worth of USDC to the Investor Landing Wallet.

b.      Unknown to the investors, however, the Investor Landing Wallet was exclusively controlled by TAJ TARSHA, the defendant, and he used that control to divert investor funds to himself. For example, on or about April 19, 2022, at 12:46 AM UTC, TARSHA transferred approximately $375,000 worth of USDC from the Investor Landing Wallet to a personal wallet he controlled with the following wallet address: 0xE3bDBc570882C8BBcE46DecFb3d66C9b414AB2Be ("Tarsha Wallet-1"). Minutes later, TARSHA transferred the same amount of USDC from Tarsha Wallet-1 to another crypto account in TARSHA's name ("Tarsha Wallet-2"). That same day, at approximately 5:02 PM UTC, TARSHA transferred an additional approximately $375,000 worth of USDC from the Investor Landing Wallet to a personal wallet attributed to CC-1 with the following wallet address: 0xa0A2E527359F9cE0e5BF0705dA7f04424875a0e6 ("CC-1 Wallet-1"). Similarly, on or about May 5, 2022, at 7:38 PM UTC, TARSHA transferred an additional $225,000 worth of USDC from the Investor Landing Wallet to Tarsha Wallet-1, which was subsequently transferred to Tarsha Wallet-2. On or about May 7, 2022, at 2:50 AM UTC, TARSHA transferred an additional approximately $225,000 worth of USDC from the Investor Landing Wallet to CC-1 Wallet-1.

c.      In approximately May 2023, TARSHA, CC-1, and Contractor-1 transitioned the company's treasury from the Investor Landing Wallet—which TARSHA had controlled alone—to a multi-signature wallet with address: 0x9c1f7C88e6066dcAE4312012e15ba7eF0B6eABb9 (the "Multi-Sig Wallet"). Unlike its predecessor, the Multi-Sig Wallet was configured to require the approval of at least two of three authorized signatories before any outgoing transfer could be executed—a control mechanism intended to prevent any single individual from unilaterally moving company funds. TARSHA,

4

CC-1, and Contractor-1 were designated as the three original authorized signatories for the Multi-Sig Wallet.

d.    The transition to the Multi-Sig Wallet prompted Contractor-1 and other Few and Far contractors to conduct a retrospective audit of Few and Far's finances and transactions involving the now-dormant Investor Landing Wallet. That audit uncovered the approximately $1,200,000 in transfers described above, revealing for the first time that a significant portion of investor proceeds had been diverted into personal wallets controlled by TARSHA and CC-1 rather than applied to any of the business purposes represented to investors.

e.    On or about June 15, 2023, Contractor-1 and other Few and Far contractors confronted TARSHA and CC-1 separately with the audit's findings. CC-1 acknowledged that he and TARSHA had taken money from the investor proceeds, which CC-1 described as "bonuses." CC-1 stated, in substance, that he would return the $600,000 that was transferred to him to Few and Far, which blockchain transfer records and documents produced by a cryptocurrency exchange show in fact occurred. TARSHA also acknowledged that he had taken money from the investor proceeds, which TARSHA described as "bonuses" that TARSHA had unilaterally awarded to CC-1 and himself. TARSHA, however, did not agree to return the money.

f.    Shortly after being confronted, TARSHA ceased all communication with Contractor-1 and other Few and Far contractors and travelled from his residence in California to Madrid, Spain. In the wake of his departure, CC-1 and Contractor-1 removed TARSHA as an authorized signer on the Multi-Sig Wallet and replaced TARSHA with CC-2. Contractor-1 and other Few and Far contractors subsequently asked CC-1 to resign from Few and Far, which he agreed to do. However, based on my review of blockchain records, it does not appear that CC-1 was removed as an authorized signatory for the Multi-Sig Wallet at the time of his resignation.

g.    Rather than accept removal from Few and Far and acquiesce to investor-led efforts to recover misappropriated funds, TARSHA moved to retake control of Few and Far's remaining treasury. Between approximately July 1 and July 5, 2023, TARSHA purported to unilaterally terminate Contractor-1 and CC-2, two of the three authorized signatories on the Multi-Sig Wallet. TARSHA also threatened Contractor-1 and CC-2 with legal action, accusing them of inappropriately seizing control of Few and Far, and demanding that they hand over all Few and Far property and digital assets—including full control of the Multi-Sig Wallet—to a new wallet controlled exclusively by TARSHA ("Tarsha Wallet-3").

h.    On or about July 8, 2023, TARSHA issued a letter to Few and Far investors and personnel publicly acknowledging, for the first time, that approximately $1,200,000 in investor funds were transferred to personal wallets controlled by TARSHA and CC-1. Rather than characterize those transfers as misappropriation, TARSHA described them as "performance-based stablecoin bonuses" tied to "pre-determined FAR token pre-sales targets." That characterization was false: no such bonus program was ever disclosed to investors, Contractor-1, or other Few and Far contractors; no investor had consented to such compensation; and founder remuneration was not among the stated uses of proceeds in any investor-facing materials.

i.    The culmination of TARSHA's effort to retake the Company's treasury occurred on or about July 20, 2023. On that date, Contractor-1's signature authority over the Multi-Sig Wallet was rescinded—an action that, given the wallet's two-of-three configuration, could

5

only have been authorized by the two remaining signatories, CC-1 and CC-2. Within hours, approximately $4,000,000 worth of various cryptocurrencies (specifically, USDC, Ethereum, Wrapped Bitcoin, and USDT) were transferred from the Multi-Sig Wallet to a digital wallet in the name of one of TARSHA's attorneys. That same day, the entirety of the approximately $4,000,000 was transferred from TARSHA's attorney's wallet to wallets associated with TARSHA, CC-1, and CC-2: approximately $2,830,000 to wallets attributed to TARSHA; approximately $746,000 to wallets attributed to CC-1; and approximately $500,000 to a wallet in CC-2's name.

> j.       On or about August 3, 2023, TARSHA issued another letter to Few and Far investors and personnel, in which he stated, in substance, that he had retaken control of Few and Far's treasury, email, and associated services, uniformly denied investor requests to be reimbursed for their SAFT purchases, and refused "as a general rule, to continue meeting individually" with investors—effectively cutting off any further recourse for those whose funds had been taken.

### The FAR Token Becomes Worthless

9.       Based on my review of public records, blockchain and cryptocurrency token records, notes of interviews with Few and Far investors and former contractors, my discussions with other law enforcement officers, and my participation in this investigation, I am aware of the following, in substance and in part:

> a.       On or about May 21, 2024—nearly two years after investors had transmitted their funds pursuant to executed SAFTs, and more than a year after TAJ TARSHA, the defendant, had misappropriated and redistributed the bulk of the company's treasury—Few and Far finally launched its FAR token. The FAR token began trading at $0.133199 per unit. On June 7, 2024, the token reached a lifetime high of $0.179390 per unit. However, by August 20, 2024, the token had drastically declined in value to a closing price of $0.018505 per unit—a loss of nearly 90% from its peak in less than three months.

> b.       As the token prices continued to decline, the company's public communications ceased entirely. The last public update provided by Few and Far was posted in a blog post on or about December 22, 2024.

> c.       The last reported price for the FAR token was $0.000174 per unit on August 3, 2025—a fraction of a cent, representing a decline of more than 99% from its launch price. The last day on which there was any volume of FAR traded was May 21, 2025. The FAR token is, for all practical purposes, worthless. The at least 48 investors who collectively committed approximately $8,415,000 to Few and Far's private sale, based on TARSHA and CC-1's representations about the proposed uses of those funds, have received nothing of value in return.

WHEREFORE, I respectfully request that a warrant be issued for the arrest of TAJ TARSHA, the defendant, and that he be arrested, and imprisoned or bailed, as the case may be.


/s/ Thomas Kovacs
Thomas Kovacs
Special Agent
Federal Bureau of Investigation


Sworn to me through the transmission of this Complaint
by reliable electronic means, pursuant to Federal Rule of
Criminal Procedure 4.1, this 4th day of June, 2026.

_____
THE HONORABLE GARY STEIN
United States Magistrate Judge
Southern District of New York